Electronically Filed
Intermediate Court of Appeals
30383
17-MAY-2013
11:21 AM

NO. 30383

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


CHARLES MEMMINGER and MARTHA MEMMINGER,
Plaintiffs-Appellants,
v.
THE SUMMIT AT KANEOHE BAY ASSOCIATION,
HAWAIIANA MANAGEMENT CO., LTD., Defendants-Appellees,
and
KANEOHE BAY VENTURE LP, SANDRA SMILEY, ERNEST
CASSELL and SUSAN CASSELL, and DOE ENTITIES 1-20,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-1253)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiffs-Appellants Charles Memminger and Martha Memminger (the "Memmingers") appeal from the Final Judgment, filed February 11, 2010 in the Circuit Court of the First Circuit ("Circuit Court"),[1] in favor of Defendants-Appellees The Summit at Kaneohe Bay Association (the "Association") and Hawaiiana Management Co., Ltd. ("Hawaiiana") (collectively, "Defendants-Appellees").

The Memmingers contend that on March 3, 2006, following heavy rainfall, unstable soil on the uphill properties owned by Defendants Ernest and Susan Cassell and Defendant Sandra Smiley (collectively, the "Individual Defendants") became saturated and failed, resulting in a landslide onto the Memmingers' property causing significant damage. The Memmingers' property is located downhill and adjacent to The Summit at Kaneohe Bay condominium project ("The Summit") while the Individual Defendants' homes are

---

[1]    The Honorable Rom A. Trader presided over all proceedings.

within The Summit. The Memmingers settled with the Individual Defendants. Several months prior to the scheduled trial, the Circuit Court granted petitions for determination of good faith settlement with regard to the Individual Defendants.

On appeal, the Memmingers argue that the Circuit Court erred by (1) granting summary judgment in favor of Defendants-Appellees upon concluding that they had no duty to abate or warn of the potential for harmful erosion caused by water drainage from individual homes within The Summit[2] and (2) declining to grant the Memmingers additional time for discovery.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the Memmingers' points of error as follows:

(1) Defendants-Appellees owed no legal duty to the Memmingers to either cause existing individual home drainage systems to be altered or to warn the Memmingers of potential downslope hazards posed by those systems.

Subject to relevant statutory provisions, a condominium's governing documents determine the relative rights and responsibilities of the association and its constituent owners. *See Ass'n of Apartment Owners of Maalaea Kai, v. Stillson*, 108 Hawaiʻi 2, 9, 116 P.3d 644, 651 (2005). *See generally* HAW. REV. STAT. chapters 514A, 514B *et seq.* (2006 & Supp. 2012). A condominium's declaration identifies those areas or elements that are common elements and limited common elements. Duties regarding each may be determined contractually in and by the governing documents. *See Maalaea Kai*, 108 Hawaiʻi at 9, 116 P.3d at 651.

Here, the Memmingers do not dispute what the Associations's governing documents clearly establish — that the

---

[2]    The Memmingers make several arguments that summary judgment was improper because genuine issues of material fact remained in dispute. However, the essential predicate, and indeed, the major thrust of their argument is that Defendants-Appellees owed them a legal duty of care. As the Circuit Court concluded otherwise, we focus our analysis on whether there existed such a legal duty. To the extent that factual determinations inform our legal conclusions, we consider the evidence and all inferences drawn therefrom in the light most favorable to the Memmingers. *See Kahale v. City & Cnty. of Honolulu*, 104 Hawaiʻi 341, 344, 90 P.3d 233, 236 (2004).

drain pipes at issue[3] are limited common elements. Nor do they directly take issue with those documents' express assignment of liability for such limited common elements to The Summit homeowners. Rather, they advance various factual bases and legal theories upon which to hold the Association liable for the damages caused by the landslide. We do not find any of these persuasive.

First, they argue that the Association was negligent in its operation and maintenance of The Summit's common element storm drain system because it unreasonably neglected to ensure that surface water from individual homes drained into that system. They fail, however, to explain why the Association had an affirmative duty (assuming for purposes of the argument that it had the ability) to compel homeowners to fully utilize that system, even if doing so might have minimized the danger of erosion, *cf.* Restatement (Second) of Torts § 314 (1965), or to explain why the absence of action should undo the governing documents' assignment of liability.

Second, they contend that several factors together lead to the inference that the Association, to some extent, caused or influenced the installation or use of individual drain pipes for homes on the perimeter of The Summit.[4] Even assuming the validity of such an inference, however, the only authority they offer addresses the liability of an association for injuries to a *member owner*, not to a neighboring land owner or other third party. *Sevigny v. Dibble Hollow Condominium Ass'n*, 819 A.2d 844, 856 (Conn. App. Ct. 2003). Thus, the Memmingers fail to provide any appropriate basis for this court to upset the agreed-upon division of liability established by the governing documents.

---

[3]    Originally, the homes within The Summit did not have individual drainage systems, such that surface water flowed unrestricted from the backs of homes. Over time, many of the homeowners installed individual drainage systems, including individual drain pipes, to channel surface flow away from individual homes. These pipes and systems are distinct from The Summit's storm drain system, which serves to channel surface water from its common roadway.

[4]    The Memmingers propose that this inference follows because these drain pipes were not an original feature, the Association "had been involved in making recommendations to homeowners regarding landslides and earth movement," and most of the homes on the perimeter of The Summit utilized identical piping.

Third, in a similar vein, the Memmingers contend that the Association owed a duty of care because it exercised, or could have exercised, some degree of control over the individual drain pipes. Their legal support, however, consists of citations to cases where associations were held liable for negligence regarding *common elements* within an association's *exclusive control*. *See Martinez v. Woodmar IV Condos. Homeowners Ass'n*, 941 P.2d 218 (Ariz. 1997); *see also Ritter & Ritter, Inc. v. Churchill Condo. Ass'n*, 82 Cal. Rptr. 3d 389 (Cal. Ct. App. 2008) (likening an association's duty of care over areas under its control to that of a landlord's).[5] Here, despite the Association's right of approval over installation or alteration of drainage systems, the pipes at issue are *limited* common elements and expressly the responsibility of the homeowner, not the Association.

Fourth, the Memmingers argue that the Association, given its particular awareness of erosion hazards at the development, had a duty to warn others about such hazards. It is well-established, however, that a party with the power to prevent harm to another standing in harm's way is only under a duty to exercise that power when it shares a special relationship with the other party. *See Lee v. Corregedore*, 83 Hawai'i 154, 158-59, 925 P.2d 324, 328-29 (1996) (citing Restatement (Second) of Torts §§ 314, 314A). Nevertheless, the Memmingers cite to *Siddons v. Cook*, 887 A.2d 689 (N.J. Super. Ct. App. Div. 2005) as a basis for finding a duty here. *Siddons* involved an association's duty to warn its *member owners* of latent dangers within non-common elements. *See* 887 A.2d at 692, 694. The fiduciary nature of the relationship between an association and its members, *see id.* at 692, might, under some circumstances, provide a basis to impose an affirmative duty upon the association to safeguard its members. But we find no sort of special relationship between an association and abutting landowners to warrant such a duty of care.

---

[5] Similarly, the Memmingers' reliance on *Rodrigues v. State* is misplaced, as *Rodrigues*' reasonable use rule addresses that which a possessor of land may do with respect to the natural flow of surface water. *See* 52 Haw. 156, 164, 472 P.2d 509, 516 (1970). Here, it is, of course, the homeowner that possesses the land; the Association is not similarly situated.

Fifth, the Memmingers contend that a letter from Hawaiiana to all homeowners at The Summit more than a year after the March 2006 incident establishes Defendants-Appellees' liability for the drain pipes. This letter, however, merely reiterated the Association's right to enforce certain provisions of its governing documents and its board of directors' obligation to The Summit's homeowners to do so, thereby protecting the homeowners' interests.[6/] Indeed, such a duty is consistent with statutory obligations, but the scope of that duty is limited to the homeowners. *See* HAW. REV. STAT. § 514A-82.4 (2012) ("Each director shall owe the association of apartment owners a fiduciary duty in the performance of the director's responsibilities."). Thus, the letter does not constitute evidence of a duty owed by Defendants-Appellees to the Memmingers, nor does it alter the fact that the individual homeowners of The Summit contracted to remain solely liable for any flooding caused by their respective drain pipes.

Finally, absent any duty owed by Defendants-Appellees to the Memmingers, their claims of trespass and nuisance must fail. As the Restatement explains:

> Tort liability is never imposed upon one who has neither done an act nor failed to perform a duty. Therefore, one whose presence on the land is not caused by any act of his own or by a failure on his part to perform a duty is not a trespasser.

Restatement (Second) of Torts § 158 cmt. f. While this tenet is expressed in the context of trespass, we find it no less apposite for nuisance.

We hold that the Circuit Court correctly granted summary judgment for Defendants-Appellees because the Association owed no duty to the Memmingers.

(2) The Circuit Court did not abuse its discretion by denying the Memmingers additional time for discovery under

---

[6/] The letter stated that:

> The Board has a duty to enforce the Association's governing documents. Among the purposes of these documents, and more specifically, [certain sections concerning landscaping], is to maintain the appearance of our project, protect our collective property values and view planes, and reduce our liability exposure to potential legal claims for flooding due to erosion. . . ."

Hawai'i Rules of Civil Procedure ("HRCP") Rule 56(f).[1] HRCP Rule 56(f) "provides a mechanism for litigants to seek a continuance or avoid summary judgment when they 'need to discover essential facts' to justify their opposition." *Exotics Hawaii-Kona, Inc. v. E.I. du Pont de Nemours & Co.*, 116 Hawai'i 277, 307, 172 P.3d 1021, 1051 (2007) (brackets omitted) (quoting *Hall v. State of Hawai'i*, 791 F.2d 759, 761 (9th Cir. 1986)). To garner relief, a litigant "must demonstrate how postponement of a ruling . . . will enable [the litigant] . . . to rebut the movant's showing of absence of a genuine issue of fact." *Josue v. Isuzu Motors Am., Inc.*, 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998) (quoting *Wilder v. Tanouye*, 7 Haw. App. 247, 254, 753 P.2d 819, 821 (1988)) (internal quotation marks omitted).

Here, the Memmingers sought additional time only to depose Defendants-Appellees' expert witness and HRCP Rule 30(b)(6) representative in order to "authenticat[e] . . . [the deponents'] testimony concerning the issues in this case." They argue that Defendants-Appellees had "challenged the authenticity of evidence relied on by the Memmingers," therefore claiming that further discovery would have benefitted them.

Notwithstanding that relief under HRCP Rule 56(f) "should be applied with a spirit of liberality," *Exotics Hawaii-Kona*, 116 Hawai'i at 308, 172 P.3d at 1052 (quoting *McCabe v. Macaulay*, 450 F. Supp. 2d 928, 933 (N.D. Iowa 2006)), we fail to discern the necessity or utility of the additional discovery sought below, *cf. Josue*, 87 Hawai'i at 418, 958 P.2d at 540, particularly when the hearing on the motion for summary judgment was held less than two weeks before the scheduled trial date. Thus, we conclude that the Circuit Court did not abuse its discretion in denying relief.

---

[1]     HRCP Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Haw. R. Civ. P. 56(f).

Therefore,

IT IS HEREBY ORDERED that the Final Judgment, filed February 11, 2010 in the Circuit Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawai'i, May 17, 2013.

On the briefs:

John F. Perkin,
Brandee J.K. Faria, and
Soria M. Hirosane
(Perkin & Faria)
for Plaintiffs-Appellants.

Jonathan L. Ortiz and
Wade J. Katano
(Ortiz & Katano
A Law Corporation)
for Defendants-Appellees
The Summit at Kaneohe Bay
Association and Hawaiiana
Management Co., Ltd.

Presiding Judge

Associate Judge

Associate Judge